UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANTONIO RICE, | ) |
|---|---|
| Petitioner, | ) |
| v. | ) No. 4:16CV36 RLW |
| JEFF NORMAN,[1] | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Antonio Rice for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition is fully briefed and ready for disposition.

### I. Procedural History

Petitioner Antonio Rice ("Petitioner" or "Rice") is currently incarcerated at the South Central Correctional Center ("SCCC") located in Licking, Missouri pursuant to the judgment and sentence of the Circuit Court of St. Charles County, Missouri. (Resp't's Ex. D pp. 108-111, ECF No. 9-4) On November 5, 2010, a jury found Petitioner guilty of one count of first degree robbery, one count of first degree assault, and two counts of armed criminal action. (*Id.* at pp. 100-03, 108) On January 12, 2011, the court sentenced him to concurrent terms of 16 years on the robbery conviction, 18 years on one conviction of armed criminal action, life imprisonment on the assault conviction, and 21 years on the other conviction of armed criminal action. (*Id.* at pp. 108-111) Petitioner filed a direct appeal, and on October 9, 2012, the Missouri Court of

---

[1] Jeff Norman is now the warden of the South Central Correctional Center, where Petitioner is housed. Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Therefore, Jeff Norman's name is substituted as the named respondent in this action. Future pleadings shall reflect this change in the caption.

Appeals affirmed the judgment of the trial court. (Resp't's Ex. E, ECF No. 9-5) Petitioner then filed a *pro se* Motion to Vacate, Set Aside, or Correct Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15 on January 7, 2013. (Resp't's Ex. F pp. 8-21, ECF No. 9-6) Appointed counsel filed an amended Rule 29.15 motion on September 16, 2013. (*Id.* at pp. 22-33) On November 19, 2014, the motion court denied Petitioner's motion for post-conviction relief. (*Id.* at pp. 34-40) The Missouri Court of Appeals affirmed the judgment of the motion court in a decision dated October 20, 2015. (Resp't's Ex. I, ECF No. 9-9) On January 11, 2016, Petitioner filed the present petition for habeas relief in federal court. (ECF No. 1)

## II. Factual Background[2]

On June 18, 2009, the victim ("Victim") spent the night at a friend's house with Petitioner Antonio Rice present. Victim had approximately $30,000 in his possession. The following day, Victim and Rice went out for dinner and then to another man's house in St. Louis, Missouri to smoke marijuana. Victim wanted to leave and asked Rice for a ride home. Rice agreed to take Victim home but wanted to get some marijuana from his uncle first. Rice, Victim, and a third man drove to a location in St. Louis where they met Curtis Selvey ("Selvey") and Selvey's father, who were Rice's cousin and uncle, respectively. Rice and Victim drove the third man home then returned to pick up Selvey, after which the three men, Rice, Victim, and Selvey, drove toward St. Charles, Missouri.

During the drive, Rice asked to use Victim's cell phone because Rice's cell phone was dead. After driving around St. Charles for five or 10 minutes, Rice stopped in a residential neighborhood. Victim asked for his cell phone, and instead of retrieving the cell phone, Rice

---

[2] The Court sets forth the facts as stated in the Missouri Court of Appeals' Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 30.25(b). (Resp't's Ex. E, ECF No. 9-5)

reached under the car seat, picked up a gun, and pointed it at Victim. Rice demanded that Victim hand over the bag containing the money. Selvey told Victim to give the bag containing the money to Rice, then punched Victim in the mouth. Victim "gave up" and tried to exit the vehicle, and Rice shot him multiple times in the back as Victim ran away. Victim collapsed to the ground, but Rice continued to shoot at Victim until porch lights came on. Rice got back in the car and drove away with Selvey.

Around 11:15 p.m., some neighborhood residents heard the shots and ran outside to see what was happening. They saw Rice's vehicle and heard Victim yell, "Help! I've been shot!" Victim told one resident that Rice had shot him. One bullet went through Victim's back and stomach, injuring his small intestine and spine, and passing close to his aorta. Another bullet went through Victim's hip, shattering his femur. Victim lost a large amount of blood, underwent three surgeries, and was confined to a wheelchair for six months.

During the police investigation, Victim identified both Rice and Selvey. Victim stated that Rice shot him and Selvey robbed him. Rice was charged for acting in concert with Selvey to commit the armed robbery and first degree assault of Victim. Rice and Selvey were charged separately. However, the trial court later granted the State's motion to join Rice and Selvey's cases for trial. Rice opposed joinder of the cases because Selvey had a history of gang involvement and Rice did not.

At trial, Selvey testified that he did not see Rice on June 19, 2009 and that was with his grandmother and his father at different times of the day and evening. Cell phone tower records linked to Selvey's prepaid cell phone number did not corroborate his story. Rice did not present any evidence. During the trial, the judge instructed the jury to give separate consideration to

3

each defendant and each count. The jury found Rice guilty, and the trial court sentenced Rice in accordance with the jury's recommended punishment.

### III. Petitioner's Claims

In his Petition, Rice raises nine grounds for federal habeas relief.[3] These grounds are as follows:

(1) The trial court abused its discretion in granting the State's motion to join Rice's trial with co-defendant Selvey's trial;

(2) Trial counsel was ineffective for failing to object to the State's improper closing argument regarding Rice's future danger to the public;

(3) Trial counsel was ineffective for failing to file a motion to sever Rice's trial from Selvey's trial;

(4) Trial counsel was ineffective for failing to move for a change of venue;

(5) Trial counsel was ineffective for failing to move for a mistrial during the cross examination of Doral Peoples by Selvey's attorney;

(6) Trial counsel was ineffective for failing to cross examine Seth Hutcherson regarding inconsistencies in his testimony;

(7) Appellate counsel was ineffective for failing to raise the claim of trial court error on direct appeal with respect to the trial court's admission of evidence concerning Cortez Strong;

(8) Appellate counsel was ineffective for failing to raise a claim of trial court error in sustaining the State's objection to Rice's attorney's cross examination of Selvey; and

(9) Trial counsel was ineffective for failing to properly prepare and investigate Rice's case.

---

[3] Four of the grounds are contained in the Petition, ECF No. 1, and the remaining five grounds are set forth in Attachment C to the Petition, ECF No. 1-3.

4

## IV. Legal Standards

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers* 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

To preserve a claim for federal habeas review, a petitioner must present the claim to the state court and allow that court the opportunity to address petitioner's claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citation omitted). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* A federal court will consider a defaulted habeas claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.*

## V. Discussion

In the instant case, Respondent contends that only two of Petitioner's claims were properly presented to the Missouri courts in his direct appeal and post-conviction proceedings. Respondent argues that the remaining seven claims are barred from federal habeas review because they are procedurally defaulted. Further, Respondent asserts that the claims are without merit.

### A. Claim One

Petitioner Rice first claims that the trial court abused its discretion in granting the State's motion to join Petitioner's trial with co-defendant Selvey's trial. Petitioner contends that the trial court's error in granting the motion prejudiced his trial because the State used evidence admitted against Selvey to argue that the jury should recommend a heavy sentence for Petitioner Rice. Respondent maintains that there is no Supreme Court case concerning proper joinder or severance of criminal defendants on habeas review but that the Missouri Court of Appeals' finding that joinder was proper was consistent with Eighth Circuit precedent.

6

"A habeas petitioner is not entitled to relief on the grounds that he was entitled to a severance unless he can show that a joint trial was fundamentally unfair." *Hood v. Helling*, 141 F.3d 892, 896 (8th Cir. 1998) (citation omitted). A petitioner shows fundamental unfairness "where mutually antagonistic defenses compromised a specific trial right or prevented the jury from making a reliable determination of guilt or innocence." Defenses are mutually antagonistic where they "force the jury to disbelieve the core of one defense in order to believe the core of the other." *Id.* (citation omitted).

On direct appeal, the Missouri Court of Appeals addressed Rice's claim that the trial court abused its discretion in granting a joint trial. The Missouri Court of Appeals concluded that the trial court did not abuse its discretion and that Rice was not prejudiced because none of the evidence in support of Selvey's alibi defense and none of Selvey's statements inculpated Rice. Additionally, because the evidence established that Rice was the shooter and instigator of the crimes, the jury was entitled to assess a harsher punishment for Rice than for Selvey. The Missouri Court of Appeals specifically found:

> Both Rule 24.06 and Section 545.880.2 require defendants to have separate trials where the probability for prejudicing one defendant exists in a joint trial. State v. Merrill, 990 S.W.2d 166, 174 (Mo. App. W.D. 1999), citing State v. Isa, 850 S.W.2d 876, 884-85 (Mo. banc 1993). However, "[t]he defendant bears an affirmative duty under Rule 24.06 and [Section] 545.880 to demonstrate that a joint trial prejudiced his right to a fair trial." Merrill, 990 S.W.2d at 174.
>
> Here, the trial court did not abuse its discretion in granting the State's motion to join Defendant's and Selvey's trials. The burden is on Defendant to prove the joint trial resulted in prejudice. Id.; Kidd, 990 S.W.2d at 182. Since Defendant did not file a motion to sever, we consider only whether joinder was proper.
>
> It is clear from the record before us that Defendant and Selvey could have been charged in a single information or indictment because they both were charged as acting in concert with one another to commit the same offenses, i.e., robbing and shooting Victim. It is well-settled in Missouri that when two individuals act in concert in committing an offense, the acts of either individual, in furtherance of that offense, are admissible. Merrill, 990 S.W.2d at 174.

Furthermore, even given the joinder of Defendant and Selvey for trial, Defendant was not prejudiced. None of Selvey's evidence in support of his alibi defense and none of Selvey's statements to police inculpated Defendant. Although it is the trial court's duty to sever the trial of co-defendants if there are irreconcilable defenses, the doctrine is limited to those cases in which the jury will infer that the conflict alone demonstrated that both co-defendants are guilty. Kidd, 990 S.W.2d at 182. In this case, the jury was not forced to infer from believing Selvey's defense that Defendant was necessarily guilty or that both were guilty. See Id. Selvey and his father both testified that they did not see Defendant on June 19. Selvey further testified that he had eaten dinner with his father and step-mother, then called a friend from a pre-paid cell phone then rode around with a friend known as "Fat Boy." Selvey did not know Fat Boy's actual name, and Fat Boy supposedly died before trial. On cross-examination, Selvey claimed that Fat Boy had been alive at the time police questioned Selvey about the shooting and robbery but that he did not tell police about him. The police detective who had interviewed Selvey testified that Selvey had told the detective "he didn't do it" because he had been with his dad and step-mother at the time of the crimes. The detective found this to be an ironic statement because he had not yet provided Selvey with the date or time the crimes had occurred.

Defendant did not present any evidence in his defense. During closing arguments, Defendant essentially argued that the State had failed to prove Defendant's guilt because Victim's and other witnesses' testimony was not to be believed.

Defendant also argues that he was prejudiced in sentencing because he received a harsher punishment than Selvey because of statements Selvey had made to police regarding his involvement in a gang-related first-degree murder of a pregnant woman and the death of her unborn baby. Defendant argues that this evidence prejudiced him "by association" with Selvey. During the sentencing phase of trial, a police detective testified that, while questioning Selvey regarding the shooting and robbery of Victim, Selvey stated that he "had gotten a free pass" on the murder case and had the attitude that he was going to get away with the crimes involving Victim. On cross-examination, the detective testified that Selvey did not mention Defendant when Selvey had made the statements regarding the murder case other than to identify Defendant as his cousin and to say Selvey had not seen Defendant for several months.

The jury instructions for both the guilt and sentencing phases admonished the jury to give separate consideration to Defendant's and Selvey's involvement in the crimes based on the law and evidence applicable to each of them. "Juries are presumed to follow instructions," and these instructions were adequate to cure any potential prejudice resulting from Selvey's evidence as to his whereabouts on the night of the shooting and robbery. Kidd, 990 S.W.2d at 182, 185. Furthermore, given the evidence establishing that Defendant was the shooter and the instigator of the crimes, the jury was entitled to assess a harsher punishment for Defendant than for Selvey, who had been present during the shooting and had robbed Victim.

8

> Accordingly, the trial court did not abuse its discretion in granting the State's motion to join their trials. Point denied.

(Resp't's Ex. E pp. 8-10) The appellate court also noted that the jury recommended a life sentence for Selvey on the first-degree assault charge, but the trial court sentenced him to 20 years instead. (*Id.* at p. 10 n.3)

The Court finds that the decision of the Missouri Court of Appeals was not contrary to, nor an unreasonable application of clearly established federal law. As set forth above, Petitioner has the burden of demonstrating that his trial was fundamentally unfair. Federal law requires Petitioner to show that the defendants had mutually antagonistic defenses which forced "the jury to disbelieve the core of one defense in order to believe the core of the other." *Hood*, 141 F.3d at 896. In Petitioner's opposition to the State's motion to join, Petitioner argued that he would be prejudiced by joining the defendants in a single trial because Selvey was previously arrested in a gang-related first degree murder case and was adjudicated in juvenile court for a lesser, related charge. (Resp't's Ex. D p. 42) Petitioner claimed that the inflammatory nature of the allegations against Selvey would cast a prejudicial light on Petitioner during sentencing. (*Id.*) In addition, Petitioner argued that Selvey made statements to the police about his involvement in the prior murder and made false statements about when he last saw Petitioner, which would prejudice Petitioner. (*Id.* at p. 43) Petitioner again raises these arguments in his Petition and in his reply brief.

The Court finds that Petitioner has not demonstrated the requisite fundamental unfairness. Here, Selvey presented an alibi defense, claiming that he was not with Petitioner on the date of the alleged offense. Indeed, Petitioner acknowledges that he and Selvey did not have mutually antagonistic defenses. While Petitioner claims that trying the two defendants together prejudiced him, Selvey's defense – that he had not seen Petitioner in months – did not incriminate

Petitioner. Likewise, Selvey's alibi defense did not conflict with Petitioner's defense challenging the evidence against Petitioner.

Further, the Court notes that the trial court instructed the jury to give separate consideration to Petitioner's and Selvey's "involvement in the crimes based on the law and evidence applicable to each of them." (Resp't's Ex. E p. 11) "Absent evidence to the contrary, the Court presumes that the jury is able to compartmentalize the evidence brought against each defendant." *Jackson v. Purkett*, No. 4:06-CV-1592 (JCH), 2007 WL 1747011, at *6 (E.D. Mo. June 18, 2007) (citation omitted). Any risk of prejudice can be cured with proper instructions because "'juries are presumed to follow their instructions.'" *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) (*quoting Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Here, the instruction given by the trial court to give separate consideration to each separate charge sufficiently cured any possibility of prejudice. *Id.* at 541.

The Court finds that the jury was able to make a reliable judgment regarding Petitioner's guilt even though the two defendants were tried together. As stated above, the defenses were not mutually antagonistic, and the trial court properly instructed the jury to give separate consideration to each defendant and the evidence applicable to each of them. Therefore, Petitioner's first claim for habeas relief is denied.

### B. Claim Two

Petitioner next claims that trial counsel was ineffective for failing to object to the State's improper closing argument during the penalty phase regarding Petitioner Rice's future danger to the public. Petitioner raised this claim in his Rule 29.15 motion for post-conviction relief and on post-conviction appeal. (Resp't's Ex. F pp. 29-31; Resp't's Ex. I) On appeal, the Missouri Court of Appeals held that trial counsel exercised reasonable trial strategy in selectively and

strategically choosing when to object and when to avoid highlighting the State's argument and irritating the jury. Specifically, the appellate court found:

> During closing argument in the penalty phase of Rice's trial, the prosecutor made comments about Rice's danger to the community if he was released from prison early. For example, the prosecutor stated, "[b]ecause when they get out, we know what they're going to do." The prosecutor also urged the jury to recommend a long sentence because "[f]or one thing, one thing we can be sure of, is it's going to take those two out of commission for a long time and probably save more than one life." Rice claims his trial counsel was ineffective for not objecting to statements like these.
>
> A movant attempting to prove ineffective assistance must present evidence to overcome a presumption that trial counsel was competent. See State v. Tokar, 918 S.W.2d 753, 768 (Mo. banc 1996). In Tokar, Tokar correctly argued that a prosecutor's argument in a penalty-phase closing argument improperly personalized the argument and was erroneous. Id. However, proving prosecutorial error was not enough; Tokar also bore the burden of proving ineffective assistance of counsel. Id. The Court noted, "[i]n many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." Id. Tokar did not present evidence to overcome the presumption that the failure to object was a strategic choice by competent counsel; thus, Tokar did not prove ineffective assistance. Id.
>
> Rice cannot overcome the same presumption. As in Tokar, Rice claims trial counsel was ineffective for failing to object to the prosecutor's improper penalty-phase argument. The motion court found that trial counsel was not ineffective for failing to "adequately object" to the State's closing argument. The motion court believed it was reasonable trial strategy not to "annoy" the jurors or highlight the State's argument. The record does not reflect that trial counsel simply sat through the prosecutor's closing argument without concern for Rice. To the contrary, the fact that trial counsel objected to portions of the prosecutor's penalty-phase argument on the grounds of improper personalization and did not object other portions of the prosecutor's closing argument is consistent with a trial strategy of selectively and strategically choosing when to object. This exact trial strategy was endorsed in Tokar, and trial counsel here was entitled to the same presumption of competence. Since Rice has not supplied any additional evidence to overcome that presumption, he cannot show that his trial counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation.
>
> Because Rice does not satisfy the first prong of the Strickland test, we do not reach the prejudice prong. See Sanders, 738 S.W.2d at 857 (we are not required to consider both prongs; if the movant fails to satisfy one prong, we need

11

> not consider the other). Because Rice cannot overcome the presumption that trial counsel's conduct was sound trial strategy, the motion court did not clearly err in denying Rice's motion for post-conviction relief.

(Resp't's Ex. I pp. 9-10)

To establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689). The prejudice prong requires Petitioner to prove that but for counsel's deficiency, the outcome of his trial would have been different absent counsel's error. *Id.* at 694; *Bucklew*, 436 F.3d at 1016. In other words, Petitioner must demonstrate "that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." *Bucklew*, 436 F.3d at 1016 (citation omitted). The question of whether counsel's performance prejudiced the trial need not be addressed if counsel's performance was not deficient; conversely, a court need not reach the question of deficient performance where a petitioner has failed to show prejudice. *Green v. Steele*, No. 4:04-CV-0610 CEJ TCM, 2007 WL 2199644, at *10 (E.D. Mo. July 27, 2007) (citations omitted).

As previously stated, habeas relief may not be granted unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). "Therefore, we will not grant [petitioner's] habeas petition unless the state court's decision in this case was contrary to, or an unreasonable application of, the standard articulated by the Supreme Court in

*Strickland." Id.; see also Bucklew*, 436 F.3d at 1016 (where state court correctly identifies *Strickland* as the controlling authority, federal courts "address whether the state court unreasonably applied that precedent and whether the state court unreasonably determined the facts in light of the evidence presented.").

Here, Petitioner has failed to demonstrate that trial counsel's performance was deficient and prejudiced the defense. Petitioner specifically challenges the prosecutor's comments during closing argument in the penalty phase related to Petitioner's future dangerousness, claiming that the comments speculated that Petitioner would commit more violence when released from prison. (Pet. p. 6, ECF No. 1) During a telephonic deposition of trial counsel related to Petitioner's Rule 29.15 motion, counsel testified that while she could not specifically remember what was going through her mind during the closing arguments, she believed "there's a fine line between objecting too much and being viewed as somebody who is annoying and seen as interrupting the prosecutor or even highlighting what the prosecutor intends on making a big deal of it." (Resp't's Ex. K p. 15, ECF No. 9-11)

"Whether to object during opposing counsel's summation to the jury is a matter of trial strategy." *Dansby v. Hobbs*, 766 F.3d 809, 836 (8th Cir. 2014). Here, trial counsel testified that she opted not to object to avoid being annoying or highlighting the prosecutor's argument. Strategic decisions regarding whether to object to a prosecutor's comments in closing argument are "virtually unchallengeable," and the Court finds that Petitioner has failed to raise a substantial argument that his attorney's decision "was outside the wide range of reasonable professional assistance." *Id.* (internal quotation and citation omitted); *see also McFadden v. Steele*, No. 4:12CV00212 AGF, 2015 WL 928468, at *8 (E.D. Mo. Mar. 4, 2015) (finding

defense counsel's decision to not object so as not to further emphasize problematic comments was reasonable trial strategy); *Bowman v. Russell*, No. 4:12-CV-0955-JCH, 2015 WL 687179, at *9 (E.D. Mo. Feb. 18, 2015) (finding the state courts were reasonable to conclude that decisions regarding limiting objections fell within the wide range of deference given to a trial attorney's strategic decisions). Because counsel's performance was not deficient, the Court need not consider the prejudice prong of *Strickland*. Thus, the Court finds that Petitioner has failed to demonstrate that trial counsel was ineffective, and Claim Two is denied on the merits.

## C. Claims Three through Nine

With respect to Petitioner's remaining claims, Respondent contends that the claims are procedurally defaulted because Petitioner failed to raise them during the state court proceedings. In his reply brief, Petitioner concedes that he procedurally defaulted on Claims 5 through 9 because he failed to present them in his direct appeal or in his amended Rule 29.15 motion.[4] However, Petitioner claims he can overcome the procedural default in Claim Nine because he received ineffective assistance of postconviction counsel.

### i. Claims Three and Four

With respect to Claims Three and Four, the record shows that Petitioner did raise these claims, ineffective assistances of trial counsel for failure to file a motion to sever the trials and for failing to move for a change of venue, in his amended Rule 29.15 motion. (Resp't's Ex. F pp. 25-29) However, on postconviction appeal, Petitioner raised only one count, ineffective assistance of counsel for failure to object to the State's penalty phase closing argument which focused on Petitioner's future dangerousness. (Resp't's Ex. I p. 5)

---

[4] Review of the record indicates that Petitioner failed to properly present Claims Three through Nine to the state court.

14

"In Missouri, 'a claim must be presented at each step of the judicial process in order to avoid default.'" *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (quoting *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir.1994) (internal quotation omitted)). A federal court is barred from considering procedurally defaulted claims unless a petitioner can show cause for the default and resulting prejudice, or actual innocence. *Bridwell v. Wallace*, No. 4:12-CV-01011-AGF, 2015 WL 5431947, at *6 (E.D. Mo. Sept. 15, 2015) (citation omitted).

Here, the Court finds that Petitioner has procedurally defaulted on Claims Three and Four. While the claims were raised in the postconviction motion, they were abandoned on appeal. Further, Petitioner has failed to establish cause to excuse his default. Failure of postconviction appellate counsel preserve claims on appeal from a postconviction proceeding does not constitute cause. *Arnold*, 675 F.3d at 1087; *Bridwell*, 2014 WL 5431947, at *6. Therefore, the Court finds that Claims Three and Four are procedurally defaulted, and those claims are denied.

### ii. Claims Five through Eight

In Claims Five through Eight, Petitioner argues that trial counsel was ineffective for failing to move for a mistrial during the cross examination of Doral Peoples by Selvey's attorney (Claim Five) and for failing to cross examine Seth Hutcherson regarding inconsistencies in his testimony (Claim Six). Petitioner also raises claims of ineffective assistance of appellate counsel for failing to raise the claim of trial court error on direct appeal with respect to the trial court's admission of evidence concerning Cortez Strong (Claim Seven) and failing to raise a claim of trial court error in sustaining the State's objection to Rice's attorney's cross examination of Selvey (Claim Eight). Petitioner agrees that these claims are defaulted because he did not raise them in his amended Rule 29.15 motion for post-conviction relief.

15

The record shows that while Petitioner did raise these claims in his pro se motion for postconviction relief, they were neither raised in his amended motion or on postconviction appeal. As previously stated, failure to present these claims to the motion court and the Missouri Court of Appeals constitutes procedural default. *Arnold*, 675 F.3d at 1087. Further, Petitioner has failed to show cause and prejudice sufficient to excuse the default. Therefore, the Court denies Claims Five through Eight as procedurally defaulted.

### iii. Claim Nine

Finally, in Claim Nine Petitioner claims that trial counsel was ineffective for failing to properly prepare and investigate his case. Specifically, he asserts that counsel failed to investigate the crime scene or interview alibi witnesses, including Petitioner's grandmother and other friends and relatives. Petitioner contends that trial counsel ignored the alibi defense and instead insisted to go with the defense of a drug deal gone bad. Petitioner raised this claim in his pro se motion for postconviction relief but failed to raise it in the amended Rule 29.15 motion or on postconviction appeal. Petitioner concedes that he did not properly raise this claim in state court. However, he asserts that he can show cause and prejudice for the default under *Martinez* due to postconviction counsel's failure to advance the claim in Petitioner's amended Rule 29.15 motion.

In *Martinez v. Ryan*, the United States Supreme Court held, "[i]nadequate assistance of counsel at an initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." 566 U.S. 1, 9 (2012). When, as in Missouri,

> a State requires a prisoner to raise an ineffective-assistance- of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a

16

> claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id.* at 14. In addition, to overcome the procedural default, "a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

Here, to overcome Petitioner's procedural default, Petitioner must establish that counsel on collateral review was ineffective under *Strickland* and that the ineffective assistance of trial counsel claim is meritorious. The Court finds that Petitioner is unable to demonstrate cause sufficient to overcome the default. As stated above, to establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689).

The Court finds that Petitioner is unable to establish that postconviction counsel's performance was deficient. In the amended Rule 29.15 motion, counsel raised four claims of ineffective assistance of trial and appellate counsel, including failure to file a motion to sever, failure to move for a change of venue, failure to object to the prosecutor's closing argument, and failure to assert on appeal trial court error in overruling the defense's hearsay objection. (Resp't's Ex. F. pp. 23-24) "If, as with appellate counsel, 'one of [post-conviction] counsel's important duties is to focus on those arguments that are more likely to succeed, [then] counsel will not be held to be ineffective for failure to raise every conceivable issue.'" *Sutton v. Wallace*, No. 4:13-CV-1285, 2016 WL 4720452, at *10 (E.D. Mo. Sept. 9, 2016) (quoting *Link v.*

17

*Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006)). Only where stronger issues are ignored is a petitioner able to overcome the presumption of effective assistance of counsel. *Id.* (citations and quotations omitted).

The Court finds that postconviction counsel's decision to focus on the four claims set forth above was reasonable trial strategy. Petitioner makes no attempt to argue that the defaulted claim is stronger than those advanced by post-conviction counsel. *See Muhammad v. Cassady*, No. 4:13-CV-1816-SPM, 2016 WL 4493682, at *9 (E.D. Mo. Aug. 26, 2016) ("It appears that post-conviction counsel determined that the claims presented were the most meritorious claims and the ones that could be supported with evidence, and Petitioner offers no argument or evidence to overcome the presumption that counsel's decision to focus on these five claims was a reasonable strategy.").

In addition, the Court finds that the underlying defaulted claim of ineffective assistance of counsel is not substantial. With respect to the unnamed friends and family that allegedly would have testified as to Petitioner's innocence, Petitioner offers nothing more than general speculation. He "does not indicate what information would have been obtained, the content of any potential testimony, or any independent support for his claim that investigation of these individuals would have had an effect on the outcome of his case." *Deck v. Steele*, 249 F. Supp. 3d 991, 1028 (E.D. Mo. 2017). Because Petitioner's allegations are merely speculative, he has failed to show that he was prejudiced by trial counsel's failure to further investigate these potential witnesses. Thus, he is unable to show ineffective assistance of counsel with respect to the unnamed individuals. *Id.*; *see also Saunders v. United States*, 236 F.3d 950, 952–53 (8th Cir. 2001) (with lack of specificity as to content of proposed testimony, petitioner cannot show how outcome of trial would have been different).

With regard to Petitioner's grandmother, Petitioner contends that she would have testified that Petitioner was with his grandmother during the date and time of the crime. Petitioner offers no independent information to support these speculative averments. The record also shows that trial counsel did call Petitioner's grandmother as a character witness. However, the grandmother specified in Petitioner's reply, Cynthia Goodrich, is not the same as the one who testified on Petitioner's behalf.[5] To the extent that Petitioner argues that trial counsel should have investigated Ms. Goodrich and presented testimony regarding Petitioner's alibi and innocence, Petitioner offers nothing but speculation that Ms. Goodrich would have offered such testimony. "Prejudice cannot be found on speculation alone." *Deck*, 249 F. Supp. 3d at 1029.

In addition, the Victim identified Petitioner as the driver and the shooter. (Resp't's Ex. A pp. 405, 423-30) Given the compelling eyewitness testimony against Petitioner, he is unable to show that Ms. Goodrich's testimony would have provided a defense or otherwise have changed the outcome of the trial. *See Moore v. Lewis*, No. 4:14CV2056 RLW, 2018 WL 1175116, at *10 (E.D. Mo. Mar. 5, 2018) (denying petitioner's claim that trial counsel was ineffective for failing to investigate and call a defense witness in light of compelling evidence against the petitioner). Because Petitioner could not succeed on a claim that trial counsel was ineffective for failing to investigate and call Ms. Goodrich to testify at trial, post-conviction counsel was not ineffective for failing to bring this unsubstantial claim on post-conviction review. *Deck*, 249 F. Supp. 3d at 1029. In short, Petitioner has failed to demonstrate that that the procedurally defaulted ineffective assistance of counsel claim was substantial and that post-conviction counsel was

---

[5] In the petition, Petitioner Rice contends that trial counsel called the grandmother as a character witness. The record shows that Petitioner's grandmother, Linda Rice, testified as a character witness during the penalty phase of the trial. (Resp't's Ex. A pp. 1067-1073, ECF No. 9-1) However, in his reply, Petitioner states that his grandma Cynthia Goodrich would have testified that he was performing chores at her house during the date and time of the crime.

19

deficient for failing to raise said claim. Therefore, Petitioner is unable to show cause for the procedural default on Claim Nine under *Martinez* and Claim Nine is denied.

Accordingly,

**IT IS HEREBY ORDERED** that that the Petition of Antonio Rice for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate judgment in accordance with this Order is entered on this same date.

Dated this 13th day of March, 2019.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**